THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DEPTFORD TOWNSHIP SCHOOL DISTRICT, | : | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | : | Civil No. 01-784 (JBS) |
| v. | : | |
| H.B., individually and by her parents and legal guardians, E.B. and P.B., | : | **O P I N I O N** |
| Defendants, Counter-Claimants, and Third Party Plaintiffs, | : | |
| v. | : | |
| RAYMOND L. SHERMAN, in his official capacity as DIRECTOR OF SPECIAL EDUCATION, DEPTFORD TOWNSHIP SCHOOL DISTRICT, | : | |
| Third Party Defendant. | : | |

APPEARANCES:

Jamie Epstein, Esquire
885 Haddon Avenue
Collingswood, NJ  08108
    Attorney for Defendant and Third Party Complainant H.B., and
    Third Party Complainant P.B., by their parents and legal
    guardians, E.B. and P.B.

James Schwerin, Esquire
Parker, McCay & Criscuolo, P.C.
Three Greentree Centre
Suite 401
Marlton, NJ  08053
    Attorney for Plaintiff Deptford Township School District and
    Third Party Defendant Raymond Sherman, Director of Special
    Education for Deptford Township School District

**SIMANDLE**, District Judge:

This matter comes before the Court upon the motion of Defendants H.B., E.B., and P.B. for the award of attorney's fees, expert fees, and costs to be paid by Plaintiff Deptford Township School District ("Deptford").  In the underlying dispute, Plaintiff sought review of a final administrative decision under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C.S. § 1400 <u>et seq.</u>  This Court reversed the administrative decision in part, eventually holding that Deptford had offered a Free Appropriate Public Education ("FAPE") but it was not in the Least Restrictive Environment ("LRE").  Defendants filed several counterclaims and this Court entered an order regarding the issue of remedy.  The parties filed cross-motions for reconsideration, and Plaintiff moved for summary judgment to dismiss Defendants' counterclaims.  This Court ordered Defendants to reimburse the Plaintiff $47,034 and Plaintiff to pay Defendants $53,040, resulting in a balance of $6,006 owed to Defendant.  The court granted Plaintiff's motion for summary judgment and dismissed Defendants' counterclaims.  The Court convened a hearing regarding the failure to provide the LRE and found that no harm had been demonstrated by Defendants and that Defendants were entitled to no remedy.  For the following reasons, Defendants' motion for attorney's fees, expert fees and costs will be granted

in part and dismissed in part without prejudice to refiling a proper application for such fees and costs.

## I.    BACKGROUND

This case involves Plaintiff Deptford's Individualized Education Plan ("IEP") under the IDEA for Defendant H.B., an autistic child, covering June 1999 through June 2000.  The original IEP was submitted to H.B.'s parents and called for H.B. to spend mornings at CDC, and afternoons at the school district's Pine Acres School in the Pre-School Handicapped ("PSH") class. H.B.'s parents, unhappy with the IEP offered by the District, unilaterally enrolled H.B. in the Goddard School, a private school, at the start of the summer of 1999.  The parents of H.B. rejected mediation to resolve the educational placement of H.B. Instead, they filed a petition for due process in October 1999 with Barbara Gantwerk, Director of the New Jersey Office of Special Education ("NJOSE"), which was then transferred to the Office of Administrative Law ("OAL").

The Honorable John R. Futey, Administrative Law Judge ("ALJ"), after holding several days of due process hearings, found by a preponderance of the credible evidence on December 6, 2000, that Deptford had failed to provide H.B. with a meaningful education.  (ALJ Decision, 12/6/00, at 34. See also Deptford Township Sch. Dist. V. H.B., No. 01-0784, 2005 U.S. Dist. LEXIS

11602, at *1 (D.N.J. June 15, 2005)).  The ALJ ordered Deptford
to create a full day in-district program in a regular education
class, incorporating applied behavioral analysis and discrete
trial therapy ("DTT") techniques to be coordinated with the
Partners in Therapy program.  (Id.)

Additionally, the ALJ ordered Deptford to bear the cost of
reimbursing the B. family for all expenses incurred to date for
providing H.B. with DTT from Partners in Therapy, and any future
costs.  (Id.)  Until a program could be created, the ALJ ordered
that H.B. be permitted to remain at the Goddard School so long as
it remained educationally appropriate, and all services since her
initial enrollment there in the summer of 1999 to her
reintroduction into the Deptford program were to be borne by
Deptford.  (Id. at 35)  In addition, the ALJ ordered Deptford to
reimburse H.B.'s parents for all transportation costs incurred
during her period of enrollment at Goddard School.  (Id.)  The
ALJ also ordered Deptford to provide compensatory education in
the areas of speech therapy and occupational therapy to H.B. from
the point of her enrollment at Goddard School and for all times
she was not given such services by the District.  Furthermore,
the ALJ ordered Deptford to reimburse Dr. Edna Barenbaum for the
costs of her independent evaluation of H.B.  The ALJ, however,
denied the request for a comprehensive evaluation for physical
therapy.

Finally, the ALJ ordered H.B.'s parents to submit an itemized list of these expenses to Deptford and for Deptford to pay within 30 days of its receipt.  (Id.)  Thereafter, the ALJ rendered an Order dated January 3, 2001, which required, inter alia, that Deptford complete a psycho-educational evaluation, a speech and language evaluation, and an updated occupational evaluation by Dr. Barenbaum and ordered Deptford to pay the costs for transportation and all evaluations required on behalf of H.B., while permitting her to remain at the Goddard School's Chesterbrook educational facility.  (ALJ Order, 1/3/01.)

Plaintiff Deptford filed an appeal from the ALJ's decision of January 3, 2001 in this Court on February 15, 2001.  Although Deptford's Complaint herein recited that it was an appeal from the January 3, 2001 decision, Deptford failed to seek a stay of that decision by the ALJ pending this appeal until May 29, 2001, which this Court then denied on September 20, 2001, and Deptford failed to address the underlying ALJ Order of December 6, 2000 at that time.  Moreover, Deptford failed at that time to file the administrative record from which it took its appeal.  Meanwhile, on June 15, 2001, the B. family moved out of the Deptford School District.

On September 27, 2001, Plaintiff amended its Complaint to reflect that it was appealing from the ALJ decision of December 6, 2000.  Thereafter, in an Opinion filed November 2, 2001, this

Court granted the motion of third-party defendants Barbara Gantwerk, Director of the New Jersey Office of Special Education, and John Farmer, then Attorney General of New Jersey, to enforce the ALJ's decision and also denied Deptford's new motion for a stay of execution of judgment and of its obligation to advance the reimbursement to the providers as ordered by the ALJ, largely due to the delay of prior Deptford counsel to seek a stay of those obligations in a timely manner.  (See Nov. 2, 2001 Opinion at 7-15.)

On December 11, 2001, this Court entered an Order which addressed Plaintiff's motion for reconsideration with respect to the stay of enforcement of the ALJ decision pending that appeal. This Court granted the stay with respect to compensatory educational services and other services not actually rendered by providers to H.B., but denied it with respect to reimbursement for services actually rendered by providers to H.B. as ordered by the ALJ on December 6, 2000 and January 3, 2001, insofar as those services were rendered through June 1, 2001.  The December 11, 2001 Order also denied Defendants' cross-motion to hold Plaintiff in contempt.  Finally, that Order required Plaintiff to immediately pay a sum of $88,090.61 to be used to pay for services already rendered, subject to reallocation depending upon the determination on the merits of the case.

In an Opinion issued on February 15, 2002, on Plaintiff's motion for summary judgment, this Court affirmed the ALJ's Orders in part and reversed them in part, determining that Deptford Township had provided a free, appropriate public education ("FAPE") to H.B., but not in the least restrictive environment ("LRE").  (See Feb. 15, 2002 Opinion.)  Deptford then filed a motion for reconsideration on June 11, 2002.  In an Opinion dated March 27, 2003, this Court denied Plaintiff's motion for reconsideration, upholding its determination that Deptford had not provided H.B. a FAPE in the least restrictive environment. (See Mar. 27, 2003 Opinion.)

By Order dated January 27, 2004, this Court bifurcated the case, splitting the IDEA appeal from the family's remaining counterclaims pursuant to 42 U.S.C. § 1983,[1] and the remedy issue

---

[1] On August 13, 2001, H.B. filed an amended counterclaim and third party complaint which included third party claims by H.B.'s sibling, P.B., who was appealing ALJ Fidler's decision of December 12, 2000, in a different administrative case.  That third party complaint was brought against Barbara Gantwerk, in her official capacity as Director of the New Jersey Office of Special Education, David Samson, in his official capacity as Attorney General of New Jersey, and Raymond Sherman, in his official capacity as Director of Special Education for Deptford Township School District, alleging that Defendants Gantwerk and Samson failed to ensure the timeliness of the due process petition with the Office of Administrative Law, and failed to enforce or take the necessary legal action against Deptford to compel compliance with the Administrative Law Judge's decision once it was rendered.  Causes of action were also alleged against Defendant Sherman.  (See Third Party Compl.)

On March 25, 2002, Deptford filed a motion for partial summary judgment as to the claims raised by P.B. in the Third Party Complaint.  This Court delivered an oral opinion and Order,

7

was set down for a final hearing.  Plaintiff filed a motion for
partial summary judgment as to the remedy issue on February 6,
2004 and Defendants filed a cross-motion for summary judgment on
March 4, 2004.  The parties agreed that no further testimony of
witnesses was required and that the remedy issue was ripe for
final determination.  This Court issued its Opinion and Order on
September 29, 2004, which ordered that Plaintiff is entitled to
reimbursement from Defendants in the amount of $52,370.00 and
also that Defendants are entitled to an award of $52,800.00 for
use in providing H.B. with compensatory occupational and speech
therapies.  The Court held that Defendasnts had suffered no harm
from the temporary lack of the Least Restrictive Environment, and
that no remedy was warranted.  The parties then sought
reconsideration of this Court's September 29, 2004 Order.

Moreover, Deptford filed its motion for summary judgment in
early December 2004, seeking dismissal of Defendants'
counterclaims and third party complaints for damages under 42
U.S.C. § 1983, violation of the Rehabilitation Act, compensatory

---

dismissing the third party claims and counterclaims brought by
P.B. without prejudice to P.B.'s right to file his own complaint
in a separate civil action on May 8, 2002.

Subsequently, on March 29, 2002, State Defendants Gantwerk
and Samson moved to dismiss the third party complaint.  In an
Opinion and Order dated May 24, 2002, this Court granted that
motion, dismissing with prejudice H.B.'s third party federal
claims against these defendants.  H.B.'s state law claims were
dismissed without prejudice to refiling in a court of competent
jurisdiction.  (See May 24, 2002 Opinion.)

damages for the parents' loss, pre-judgment interest, violation of the Federal Educational Rights and Privacy Act of 1974 and Constitutional claims against state defendants.  The Court heard oral argument on the motions for reconsideration and summary judgment on January 28, 2005 and February 10, 2005, respectively.

On June 15, 2005, this Court issued an Opinion and Order with respect to both the reconsideration of remedy and Plaintiff's motion for summary judgment.  In recalculating the amount owed to Defendants, this Court considered the prevailing market rate for occupational and speech therapy over an extended 52-week school year.  This increased the amount owed to Defendants from $52,800 to $53,040.  Furthermore, this Court concluded that ALJ Futey indeed ordered two evaluations by Dr. Barenbaum.  The initial evaluation was billed at $2,525, and the second at $2,100, which this Court later reduced to a sum of $500 at a hearing held on December 11, 2001.  In light of this, the Court reconsidered its previous order and concluded that Plaintiff was not entitled to the return of the $2,525.

Furthermore, this Court found that ALJ Futey properly ordered Plaintiff to assume financial responsibility for Defendant H.B.'s placement at the Goddard School, and therefore Defendant did not have to reimburse Plaintiff an additional $2,811.  The Court found that Plaintiff was therefore entitled to

9

reimbursement in the amount of $47,034 and Defendant was entitled to an award of $53,040, with a balance of $6,006 due from Plaintiff to Defendants.  These awards derived, in essence, from Deptford's obligations to provide certain services during the period of time covered by the ALJ's orders prior to Deptford seeking a belated stay of those orders pending this appeal.  This Court then granted Plaintiff's motions for summary judgment and Defendants' counterclaims were dismissed in their entirety.

For achieving this limited recovery after four years of litigation, Defendants now argue that they are owed attorney's fees in the amount of $265,547.66, expert's fees in the amount of $5,122.11 and costs in the amount of $150.  Defendants argue that, pursuant to 20 U.S.C. § 1415(i)(3)(b) and the law of this Circuit, they are entitled to these fees and costs as prevailing parties in an IDEA action. The Court must first examine the degree to which Defendants may be deemed a "prevailing party" under § 1415(i)(3)(b), and must then determine the appropriate lodestar figures of reasonable hourly rate and reasonable number of hours, before considering any adjustment for the limited nature of success.  The determination of the reasonable number of hours is made impossible, however, due to the structural problems of Defendants' fee application, as discussed below.

10

## II.  DISCUSSION

### A.   Attorney's Fees

#### 1.  Prevailing Party

Pursuant to 20 U.S.C. § 1415(i)(3)(B), "In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorney's fees as part of the costs to the parents of a child with a disability who is the prevailing party."  Under Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, 532 U.S. 598, 604 (2001), in deciding whether a party is a prevailing party, "enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." The party seeking attorney's fees -- here the Defendants -- must "receive at least some relief on the merits of [their] claim before [they] can be said to prevail."  State Teachers' Assn. v. Garland Ind. Sch. Dist., 489 U.S. 782, 792 (1989).  Success that is de minimis may not warrant a fee.  Id.  The party must demonstrate it has prevailed on "any significant claim affording some of the relief sought."  Id. at 791.  The success must affect the behavior of the adverse party toward the petitioner.  Hewitt v. Helms, 482 U.S. 755, 761 (1987).  One such example is where the petitioning party has obtained a judgment for payment of

11

money that would not otherwise have been paid.  Farrar v. Hobby, 506 U.S. 103, 113 (1992).

In the present case, the only relief obtained by Defendants was to enforce compliance with the ALJ's decision prior to the time it was partially reversed by this Court, and Defendants achieved no relief upon the aspect of the ALJ's ruling that was affirmed (namely, failure to provide the LRE) because Defendants could demonstrate no harm.  The Defendants achieved this Court's interim award of $88,090.61, consistent with the ALJ's determination and before its reversal, because Deptford had not timely sought a stay of same, but not because Defendants proved entitlement upon this record.  When it turned out that the ALJ's award was reversed in relevant part, and that no remedy was due for failure to provide the education in the least restrictive environment, the Court basically ordered Defendants to return the portion of the previous interim payment which had not been actually spent in reliance on the ALJ's erroneous decision. Defendants were, however, allowed to retain funds spent in good faith reliance upon the ALJ's determination prior to this Court's various rulings, and to this extent, Defendants "prevailed," that is, they were allowed to obtain and retain at least a part of the funds and benefits to which Deptford had challenged their entitlement.  As noted above, Defendants were entitled to an award of $53,040 for use in providing H.B. with compensatory

12

occupational and speech therapies in the time covered by the ALJ's order, while being required to refund to Deptford $47,034 (mostly for improperly-ordered discrete trial therapy services), as explained in the Opinion and Order of June 15, 2005.  The final judgment thus amounted to the difference -- $6,006 -- in favor of Defendants.

This Court holds that this recovery of money tips the balance slightly in favor of determining that the Defendants are a prevailing party with respect to this claim for benefits and services, to a scant and unimpressive degree.  Defendants' limited success will be factored into the determination of a reasonable fee after this Court next examines the lodestar indicators of hourly rate and hours expended.

## 2.  Hourly Rate

The reasonable hourly rate is determined by reference to the marketplace, see Missouri v. Jenkins, 491 U.S. 274, 285 (1989) ("we have consistently looked to the marketplace as our guide to what is 'reasonable'.")  The attorney's customary billing rate is the proper starting point for calculating fees.  Cunningham v. City of McKeesport, 753 F.2d 262, 268 (3d Cir. 1985), vacated on other grounds, 478 U.S. 1015 (1986).

In this case, attorney Jamie Epstein has furnished his affidavit stating, among other things, that his hourly rate is $300 per hour, which he says is consistent with the accepted

13

hourly rate of qualified attorneys in his area of practice, which is school law.  He has 15 years experience as a member of the New Jersey bar, and personal experience in providing educational services to educationally handicapped children.  Deptford does not specifically object to the $300 hourly fee.

This Court finds that $300 is a generous hourly fee for such litigation in this area, but it is justified if the attorney shows the efficiency normally associated with 15 years of specialized practice in the field.  The Court will apply the $300 hourly fee for this case, while insisting upon the high degree of efficiency and effectiveness that an attorney rating such a fee should demonstrate.

### 3.   **Reasonable Hours**

Mr. Epstein claims 882.1 hours were reasonably expended in this case, and he has appended his summary of time expended in this case, by date, with a brief description of the nature of the services.  Deptford objects to the time records as being too vague, warranting a reduction in the hours allowed.  The records are undifferentiated by the phases of the case and matters being dealt with.  The descriptions of services are vague and it is largely not possible to determine how particular services are linked to the various matters litigated herein.

These are serious deficiencies in light of the well-settled teachings of Hensley, which places upon the petitioner the burden

14

of maintaining records that permit the reviewing court to assess
their inclusion.  Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).
Greater specificity is required to evaluate claims of "excessive,
redundant or otherwise unnecessary" work.  Id. at 434.  The
determination of "reasonableness" of time expended cannot be made
with vague, non-categorical billing entries.  It is especially
pertinent in this case, in which the Court has held, supra, that
Defendants have achieved only scant success, that Defendants must
demonstrate which services were reasonable and necessary in
association with this degree of success.

     For example, are Defendants' considerable fees for services
before the ALJ compensable under circumstances where the ALJ's
determination was reversed in part and unsuccessful in obtaining
a remedy upon appeal as to the non-reversed part?  Would any
services rendered in this case after the Court's entry of the
Opinion of March 27, 2003 be recoverable, since Defendants
enjoyed no success after that date and only lost ground in being
required to refund a substantial part of the interim payment from
January, 2002 and being denied a remedy upon the LRE claim?

     Some entries simply beg further explanation, e.g., how
counsel can bill 19.1 hours and 8.1 hours both on November 27,
2001; or 21.9 hours on December 10, 2001; or 18.1 hours on
December 26, 2001 and a second entry on December 26 2001 for 3.7
hours, or a third entry on December 26, 2001 for 21.5 hours, or a

fourth entry on December 26, 2001 for 18.4 hours, totaling <u>61.7 hours on one day</u>; similarly for multiple entries on January 6, 2005 totaling 17.9 hours; the necessity for seemingly weekly calls to client regarding "status of case" always exactly 0.3 hours in length; the purposes of counsel's numerous entries of review of [some other case name]" and whether that review was necessary for this case.  Furthermore, the affidavit presents vague entries such as "research" or "review" making it impossible to tie the entry to particular legal services.

Where Mr. Epstein's billing records are voluminous and non-categorized, and where certain entries (including those identified above) are either too vague to form the basis of an award or too disturbing to lend credibility to the fee application, the Court must reject the affidavit and require resubmission, tailored to the above concerns.  Otherwise, this Court would have to do counsel's work by seeking meaning and order in an undifferentiated list of 16.3 pages of entries, with approximately 60 entries per page, totaling some 978 entries, many of which are vague, conclusory, or even impossible to believe.

The Court might arguably be within its discretion to deny fees entirely where a petition is "intolerably inflated" and "outrageously excessive," <u>Brown v. Stackler</u>, 612 F.2d 1057, 1059 (7th Cir. 1980), or where there was an "inexcusable" failure to

cull unnecessary or redundant hours, <u>Lewis v. Kendrick</u>, 944 F.2d 949, 956 (1st Cir. 1991), or where the amount requested "was so outrageously excessive as to shock the conscience of the court," <u>Fair Housing Council of Greater Washington v. Landow</u>, 999 F.2d 92, 96-98 (4th Cir. 1993).  The better practice, at this point, in this Court's view, would be to give Mr. Epstein a second opportunity to greatly refine his fee application and affidavit to bring it into line with the concerns expressed herein.  The Court requires greater specificity, some reasonable segmentation or categorization (such as the motion or hearing that the particular work was directed toward), and an exercise of billing judgment culling unnecessary, unproductive, and unrelated tasks when a private client would not be billed for them.

Mr. Epstein's reapplication will be due in twenty (20) days. It should be in affidavit form, conforming to L. Civ. R. 54.2, and be accompanied by a brief which addresses the concerns expressed above, and which groups services together for the ultimate tasks served by the legal work, such as preparation of each specific brief, or discovery tasks, or preparation tasks, <u>inter alia</u>.  Thereafter, Mr. Schwerin will have twenty (20) days to submit his response to the resubmission.


**III. CONCLUSION**

17

For the reasons stated above, the Court finds that the Defendants are deemed a "prevailing party," but to a scant and unimpressive degree, and that a reasonable hourly rate is $300 in this case.  The Court has rejected the fee application for failure to comply with precedent and procedural rules such as L. Civ. R. 54.2 in the many particulars discussed above, without prejudice to Defendants' right to resubmit a proper petition, affidavit and brief by new motion filed within twenty (20) days hereof.


**March 31, 2006**                    **s/ Jerome B. Simandle**
Date                                   Jerome B. Simandle,
                                       United States District Judge

18