THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DEPTFORD TOWNSHIP SCHOOL DISTRICT, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 01-784 (JBS) |
| v. | |
| H.B., individually and by her parents and legal guardians, E.B. and P.B., | **O P I N I O N** |
| Defendants, Counter-Claimants, and Third Party Plaintiffs, | |

APPEARANCES:

Jamie Epstein, Esq.
1101 Route 70 West
Cherry Hill, NJ 08002
    Attorney for Defendant and Third Party Complainant H.B., and
    Third Party Complainant P.B., by their parents and legal
    guardians, E.B. and P.B.

James Schwerin, Esq.
PARKER, McCAY & CRISCUOLO, P.C.
Three Greentree Centre
Suite 401
Marlton, NJ  08053
    Attorney for Plaintiff Deptford Township School District

**SIMANDLE**, District Judge:

    This matter comes before the Court upon the second motion of
Defendants H.B., E.B., and P.B. for the award of attorney's fees,
expert fees, and costs to be paid by Plaintiff Deptford Township
School District ("Deptford"), under the Individuals with
Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, et seq.
This Court granted in part and dismissed in part Defendants'

first motion for attorney's fees, expert fees and costs, holding
that Defendants' counsel's account of the hours he spent working
on this matter was too vague for this Court to properly
adjudicate his fee application.  The Court allowed Defendants to
resubmit a corrected fee application, which seeks fees of
$259,214.50 and expert fees of $5,122.11.  For the following
reasons, Defendants' corrected application for attorney's fees
and costs will be reduced as excessive in light of counsel's
experience and the scope of the matters in dispute, and
unreasonable in light of the clients' scant success on the
merits, and approved in the amount of $98,550.00.

I.   **BACKGROUND**

Because the parties to this action are familiar with the
underlying facts of this case, the Court will only summarize the
facts that are pertinent to this second motion for attorney's
fees.  In the underlying dispute, Plaintiff sought review of a
final administrative decision under the Individuals with
Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq.
This Court reversed the administrative decision in part,
eventually holding that Deptford had offered a Free Appropriate
Public Education ("FAPE") but was not in the Least Restrictive
Environment ("LRE").  Defendants filed several counterclaims and
this Court entered an order regarding the issue of remedy.  The
parties filed cross-motions for reconsideration, and Plaintiff

2

moved for summary judgment to dismiss Defendants' counterclaims. This Court ordered Defendants to reimburse the Plaintiff $47,034 and Plaintiff to pay Defendants $53,040, resulting in a balance of $6,006 owed to Defendant.  The court granted Plaintiff's motion for summary judgment and dismissed Defendants' counterclaims.  The Court convened a hearing regarding the failure to provide the LRE and found that no harm had been demonstrated by Defendants and that Defendants were entitled to no remedy.

After achieving limited recovery after four years of litigation, on August 1, 2005, Defendants submitted a motion for the award of attorney's fees, expert fees, and costs to be paid by Plaintiff in the amount of $265,547.66, expert's fees in the amount of $5,122.11 and costs in the amount of $150. [Docket Item No. 171.]  Defendants argued that, pursuant to 20 U.S.C. § 1415(i)(3)(b) and the law of this Circuit, they are entitled to these fees and costs as prevailing parties in an IDEA action.

A.   **The March 2006 Opinion**

On March 31, 2006, this Court issued an Opinion and Order with respect to Defendants' motion for the award of attorney's fees, expert fees and costs.  See Deptford v. H.B., No. 01-783, slip op. at 1 (D.N.J. Mar. 31, 2006) (the "March 2006 Opinion"). In the March 2006 Opinion, the Court stated that it must first determine whether Defendants are a "prevailing party" under §

3

1415(i)(3)(b) and then determine the appropriate lodestar figures of reasonable hourly rate and reasonable number of hours.

To this end, this Court first ruled on the issues of whether and to what degree Defendants may be deemed a "prevailing party." In deciding that Defendants were in fact a prevailing party, the Court found that:

> In the present case, the only relief obtained by Defendants was to enforce compliance with the ALJ's decision prior to the time it was partially reversed by this Court, and Defendants achieved no relief upon the aspect of the ALJ's ruling that was affirmed (namely, failure to provide the LRE) because Defendants could demonstrate no harm.

Id. at 12. However, "[w]hen it turned out that the ALJ's award was reversed in relevant part, and that no remedy was due . . . the Court basically ordered Defendants to return the portion of the previous interim payment which had not been actually spent in reliance on the ALJ's erroneous decision." Id. Thus, Defendants "prevailed" in that Defendants were allowed to retain funds (in the amount of $53,040) that they had already spent in reliance on the ALJ's determination prior to this Court's various rulings. Finally, the Court held that "this recovery of money tips the balance slightly in favor of determining that the Defendants are a prevailing party with respect to this claim for benefits and services, to a scant and unimpressive degree," and that the Court would factor this "limited success . . . into the determination

of a reasonable fee after this Court . . . examines the lodestar indicators of hourly rate and hours expended" Id. at 13.

Next, the Court addressed whether Defendants present a reasonable hourly rate for Defendants' attorney Jamie Epstein. Id. at 13-14.  The Court found that the rate of $300 per hour "is a generous hourly fee for such litigation in this area, but it is justified if the attorney shows the efficiency normally associated with 15 years of specialized practice in the field." Id. at 14.  In deciding that $300 was an appropriate rate, the Court stated, however, that it will "insist[] upon the high degree of efficiency and effectiveness that an attorney rating such a fee should demonstrate." Id. at 14.

Finally, the Court did not decide the second half of the lodestar equation (i.e., whether the hours Mr. Epstein billed were reasonable for the work performed and results achieved), holding that "[t]he determination of the reasonable number of hours is made impossible . . . due to the structural problems of Defendants' fee application . . . ."  Specifically, the Court left this issue unresolved because "[t]he descriptions of services are vague and it is largely not possible to determine how particular services are linked to the various matters litigated herein." Id.  The Court found that Epstein's bills present "serious deficiencies in light of the well-settled teachings of [Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)]"

and that the "determination of 'reasonableness' of time expended cannot be made with vague, non-categorical billing entries." March 2006 Opinion, at 14-15.  Moreover, given that Defendants have achieved only "scant success," the Court would require Defendants to "demonstrate which services were reasonable and necessary in association with this degree of success."  Id. at 15.[1]

Of special concern in this case is the limited degree of success achieved through the applicant's legal services and efforts.  While it is clear that the Defendants, represented by Mr. Epstein, were entitled to "prevailing party" status under IDEA, as determined in the March 2006 Opinion and Order, supra, it is equally clear that their success was minimal.  The Supreme Court has recognized that the IDEA contains a "generous formulation" of the term "prevailing party," Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792 (1989), and that even an award of nominal damages will render the recipient a "prevailing party," Farrar v. Hobby, 506 U.S. 103, 111-12 (1992). Importantly for present purposes, however, the Supreme Court also

_____

[1]  In light of these issues, as well as certain of Mr. Epstein's time entries that "simply beg further explanation," the Court rejected the affidavit and requested re-submission addressing the Court's concerns that Defendants' affidavits contain vague (and, in some instances, implausible) entries. Specifically, the Court requested greater specificity and "some reasonable segmentation or categorization (such as the motion or hearing that the particular work was directed toward)."  Id. at 17.

recognized that limited success on the merits may warrant a
reduction of requested fees in order to be "reasonable," stating:
"Although the 'technical' nature of a nominal damages award or
any other judgment does not affect the prevailing party inquiry,
it does bear on the propriety of fees awarded under § 1988." Id.
at 113-14 (citations omitted) quoted in P.N. v. Clementon Bd. of
Educ., 442 F.3d 848, 855-56 (3d Cir. 2005) (applied to IDEA fee
application).  Thus, as the Court of Appeals has repeatedly
stated, "the degree of the plaintiff's overall success goes to
the reasonableness of the award under Hensley, not to the
availability of a fee award vel non." Truesdell v. Phila. Hous.
Auth., 290 F.3d 159, 166 (3d Cir. 2002) (quoting Texas State
Teachers, 489 U.S. at 782); P.N. v. Clementon Bd. of Educ., 442
F.3d at 856.  This Court's task, where the fee applicant has
achieved limited success, is to "award only that amount of fees
that is reasonable in relation to the results obtained."
Truesdell, 290 F.3d at 166 (quoting Hensley, 461 U.S. at 440).
Acknowledging that there is "no precise formula" in making this
determination, the Supreme Court advised that the district court
"may attempt to identify specific hours that should be
eliminated, or [] simply reduce the award to account for the
limited success." Id. (quoting Hensley, 461 U.S. at 436-37).
This Court must therefore endeavor to weigh the factor of limited
success together with the other relevant concerns to determine,

7

for each category of time claimed, a reasonable amount of fees for reimbursement, including any reduction under <u>Hensley</u> for the minimal results obtained.

**B.   Defendants' Resubmitted Motion for Attorney's Fees, Expert Fees and Costs.**

Mr. Epstein timely made the requested re-submission on April 24, 2006. [Docket Item No. 179.] Plaintiff Deptford filed opposition on May 2, 2006 to which Defendants replied on May 18, 2006. [Docket Item Nos. 180, 181.][2] In an attempt to comply with this Court's March 2006 Opinion, Mr. Epstein provided the Court with an affidavit breaking down his requested fees and costs as they relate to certain phases of the case (e.g., proceedings before the Office of Administrative Law, dispositive motion practice.) Defendants' summary is as follows:

- Preparation and trial before the Office of Administrative Law (April 9, 1999 through January 7, 2001) - 254.6 hours;

- Enforcement with the New Jersey Office of Special Education, this Court, and the Third Circuit Court of Appeals (January 11, 2001 through January 7, 2002) - 264.4 hours;

- Motions for Summary Judgment (December 9, 2001 - February 15, 2002) - 43.5 hours;

---

[2] The parties have made additional submissions to the Court, including Plaintiff's May 26, 2006 and November 6, 2006 letters and Defendants' November 2, 2006 and November 6, 2006 letters. [Docket Item Nos. 183, 184, 185, and 187.] The Court has read and considered all of this correspondence.

- Motion practice regarding Plaintiff's motion for reconsideration (February 18, 2002 - March 28, 2003) - 48.4 hours;

- Motion practice regarding motion for partial summary judgment (March 31, 2003 - September 29, 2004) - 64.2 hours;

- Motion practice regarding Plaintiff's motion for reconsideration and Defendants' motion for partial summary judgment (September 30, 2004 - June 16, 2005) - 140.9 hours; and

- Motion for attorney's fees and costs (June 25, 2005 - April 20, 2006) - 45.1 hours.

The total request for attorney's fees and costs in Defendants' resubmitted application is $259,214.50 representing 861.4 hours.[3] In addition, Defendants seek expert fees in the amount of $5,122.11 for Dr. Barenbaum and Kathy Odri.[4]

## II.  DISCUSSION

Having received Mr. Epstein's resubmission and affidavit, the Court makes a second attempt to determine the appropriate lodestar figure by addressing the issue of whether Mr. Epstein's hours billed are reasonable for the work performed.  When calculating this lodestar amount, the Court must examine the

---

[3]  The Court notes that after this Court questioned the legitimacy of certain time entries in Mr. Epstein's first motion for attorney's fees, Mr. Epstein reduced the number of hours billed from 882.1 hours to 816.3 hours (excluding additional hours billed in the preparation of the present motion for attorney's fees.)  This represents a reduction of only 65.8 hours (nearly 7.5% of the 882.1 hours originally billed.)

[4]  Defendants also ask that the final net amount owed to Defendants in compensatory education be corrected from $6,006.00 to $8,531.00.  (See discussion in Section II.E, infra.)

record to determine that the hours billed are not "unreasonable for the work performed." Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031, 1037 (3d Cir. 1996).  In its evaluation, the district court has "a positive and affirmative function in the fee fixing process, not merely a passive role." Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001).  As part of the determination of reasonable hours expended, attorneys seeking fees must document the hours for which payment is sought "with sufficient specificity . . . . [W]here the documentation of hours is inadequate, the district court may reduce the award accordingly." Washington, 89 F.3d at 1037 (internal citations omitted); R.C. v. Bordentown Reg'l Sch. Dist. Bd. of Educ., No. 05-3309, 2006 U.S. Dist. LEXIS 72720, *6-9 (D.N.J. Sept. 29, 2006).  Additionally, a "party entitled to an award of attorneys' fees is . . . entitled to reimbursement for the time spent litigating its fee application." Planned Parenthood of Cent. New Jersey v. Attorney General of State of New Jersey, 297 F.3d 253, 268 (3d Cir. 2002).

The Third Circuit has provided guidelines for determining reasonable hours.  Id.  Specifically, the Planned Parenthood court held that:

> A reasonable fee for hours spent preparing for a legal argument should be limited to hours reasonably necessary for a lawyer to become familiarized with the facts and the law pertaining to the issue to be argued, an analysis of the opponent's argument, and questions anticipated to be posed by the court.

Id. at 269.  Particularly relevant to the present action, "the higher the allowed hourly rate commanded based upon skill and experience, the shorter the time it should require an attorney to perform a particular task."  Apple Corps. Ltd. v. Int'l Collectors Soc., 25 F. Supp. 2d 480, 490-491 (D.N.J. 1998) (citing Rainey v. Philadelphia Hous. Auth., 832 F. Supp. 127, 130 (E.D. Pa. 1993)).  In particular, a fee applicant "cannot demand a high hourly rate . . . based on his or her experience, reputation, and a presumed familiarity with the applicable law and then run up an inordinate amount of time researching that same law." Ursic v. Bethlehem Mines, 719 F.2d 670, 677 (3d Cir. 1983).

Defendants argue that they are entitled to full attorney's fees as they have prevailed on every issue at the administrative law level except for the issue of whether H.B. was entitled to physical therapy. (Defs.' Br. at 7.)  Moreover, according to Defendants, even in this Court, Defendants prevailed on numerous other issues.  (Id.)  In their opposition papers, Plaintiff argues first that this Court should deny Defendants' entire application for "the continued abuse which remains" in Defendants' new application even after the Court gave Defendants a chance to correct its fee application.  (Pl.'s Br. at 3.)  The Court declines to do so.  Second, Plaintiff argues that Defendants' level of success should be deemed "de minimis," and

as such, this Court need not award any fee.  (Id. at 7.)  This is
not permitted by Hensley and its progeny, although a significant
reduction for minimal success is permitted here.  Finally,
Plaintiff argues that Defendants have done nothing to correct the
vagueness that the Court recognized in its March 2006 Opinion.
(Id. at 11-12.)  The Court will analyze the new petition rather
than compel a third attempt, because it is an improvement, even
though it remains generally unhelpful to the task of connecting
efforts of counsel to the success achieved.

This Court has reviewed all of the time entries submitted by
Mr. Epstein.  (Def.'s Br. at Ex. A.)  Such time entries are
voluminous, covering 16 pages with approximately 50 entries per
page.  The Court has grouped all billing entries together into
discrete categories of services related to the phases of the
litigation, as the Third Circuit panel itself did in Maldonado v.
Houstoun, 256 F.3d at 185-87.  The Court reaches the following
conclusions.

**A.  Attorney's Fees For Services Rendered from April 9,
    1999 through March 28, 2003**

Defendants' fee application contains time entries beginning
on April 9, 1999 and continuing through March 28, 2003.  These
time entries relate to (1) Defendants' preparation and trial
before the Office of Administrative Law, (2) enforcement actions
before the New Jersey Office of Special Education, this Court,
and the Third Circuit Court of Appeals, (3) motion practice

12

related to the parties' motions for summary judgment (decided on February 15, 2002) and (4) motion practice related to Plaintiff's motion for reconsideration (decided on March 27, 2003). Defendants' affidavit states that the total hours spent on these four matters were 610.9 and Defendants request fees and costs in the amount of $183,644.50. Defendants are entitled to some attorney's fees for these tasks because, as this Court found in its March 2006 Opinion, Defendants were the "prevailing party" in the action before the ALJ, albeit to a "scant and unimpressive degree," on summary judgment and in defense of Plaintiff's motion for reconsideration. See March 2006 Opinion at 13. However, the Court finds that the hours submitted by Defendants are excessive in light of the high hourly fees Mr. Epstein charged and the financial stakes involved. Counsel must either perform more efficiently in a non-complex case such as this or delegate certain routine and administrative tasks to junior lawyers or other support personnel. Counsel must not expend excessive hours to litigate trivial or inconsequential matters.

Much of the substance of Mr. Epstein's efforts on behalf of his clients was directed toward upholding the ALJ's determinations and preserving funds for special education services ordered by the ALJ. These efforts were not successful in upholding the ALJ's findings or in demonstrating that Deptford's placement of H.B. caused harm to her; the Defendants'

success, moreover, was largely limited to not having to repay funds expended by Defendants in reasonable reliance on the ALJ's orders while Deptford launched its appeal and failed to seek or obtain a timely stay of its obligations under those orders.  As such, these claimed hours will be reduced as follows:

      **1.    Time Attending Hearings, Depositions, Trials and Travel.**

For the period beginning on April 9, 1999 and ending on March 28, 2003, Mr. Epstein submits 102.6 hours spent attending hearings, depositions, trials and traveling on behalf of his client.  The Court finds that Mr. Epstein's submissions with respect to these hours are reasonable and will not be reduced.  Mr. Epstein was required to attend these hearings and proceedings and the Court will assume that he had no or limited control over the scheduling or length of such court proceedings or the time it took to travel to the proceedings.  As such, the Court finds that the amount of time submitted by Mr. Epstein for these tasks is reasonable.

      **2.    Phone Calls From Counsel, Reviewing and Writing Correspondence and Similar Activities.**

For the relevant period (April 9, 1999 through March 28, 2003), Mr. Epstein submits 131.6 hours spent on various task such as phone calls updating clients, calls with various counsel, reviewing or writing a variety of correspondence to counsel, state agencies, and the Court and reviewing bills and invoices

from services Mr. Epstein used in the course of this litigation.
This amount is excessive and will be reduced.  Counsel must
perform such routine tasks more efficiently or delegate such work
to either a junior lawyer, paralegal or other member of Mr.
Epstein's support staff.  Mr. Epstein must delegate such work to
others whose hourly rates are significantly lower than his but
who would be equally capable of handling matters such as drafting
letters to attorneys regarding scheduling issues, reviewing
notices from the New Jersey Department of Education regarding
mediation (entry on September 23, 1999), reviewing bills from
entities like "Discrete Trial Therapy" (entry of November 20,
1999), reviewing letters from the Office of Administrative Law
regarding notice of filing and hearing (entry on June 5, 2000),
drafting letters to the adversary enclosing a bill (entry on
January 7, 2001), preparing a waiver of service (entry on May 9,
2001), or drafting a letter to this Court regarding moving a
deadline to respond to a motion (entry on February 15, 2002).
The fact that Mr. Epstein is so "hands on" in every aspect of
this litigation may have benefitted his client but this Court
cannot accept his charging $300 per hour to perform what in many
cases are essentially administrative tasks that can be ably
handled by a paralegal or office personnel.

Other entries cause the Court to question why Mr. Epstein
failed to delegate certain work to his support staff.  For

15

example, on August 22, 2001 Mr. Epstein recorded 1.2 hours to review three certificates of service and file return of service with this Court.  This task could have (and should have) been performed by a paralegal or capable legal assistant, or, if actually done by Mr. Epstein personally, these should have been billed at a much lower rate or absorbed as routine office overhead.  In addition, by way of further example, part of a 3.2-hour time entry on January 7, 2002 included depositing a check from his clients.  Again, this task should have been delegated to a member of Mr. Epstein's support staff so that his client would not be charged at the rate of $300 per hour for a task that could have been competently performed by an assistant, and is in any event non-compensable.  These entries (and many others involving office tasks rather than legal services) are unreasonable and will be reduced.

The Court also notes that Mr. Epstein spent a significant amount of time calling his clients to update them on the status of their case.  The amount of time Mr. Epstein spent on this task (totaling a staggering 22.3 hours which reflect more than 85 calls with his clients) is inordinate and have not been shown to have contributed to Defendants' limited degree of success.  This Court recognizes that, in New Jersey, a lawyer has an ethical duty to keep his client "reasonably informed about the status of a matter" and "shall explain a matter to the extent reasonably

16

necessary to permit the client to make informed decisions regarding the representation." New Jersey Rules of Prof'l Conduct R. 1.4(b),(c) (2006). However, the key term in Rule 1.4(b) is "reasonable." After this matter was adjudicated by the ALJ, it was no longer an emergent matter that warranted what appears to be weekly status update calls to Defendants even when motions were pending and there was little day-to-day activity with the case. Indeed, for most of the case there was no dispute about H.B.'s placement since the Defendants move out of Deptford Township. While each time entry of 0.2 or 0.3 hours may appear insignificant, a time entry of 0.3 represents a total fee of $90, a significant amount of money. In total, Mr. Epstein makes application for almost $6,700 just to keep his client updated on the status of the case. There is no doubt that such updates could have been provided by his legal assistant or paralegal at a reduced cost or no cost to Plaintiff, especially for periods like the one between September 12, 2002 and February 2, 2003 when there was no activity in the case yet Mr. Epstein recorded 2.2 hours to make nine calls to his client "updating" them on the "progress" of the case.

As such, this Court will reduce these time entries by 60% from 131.6 hours to 52.6 hours at the $300/hour rate.

3.     **Preparation for Hearings, Research on Legal Issues, Review of Court Opinions and Orders, Drafting Briefs, Reviewing Transcripts and Similar Activity.**

For the relevant period (April 9, 1999 through March 28, 2003), Mr. Epstein submits 376.7 hours spent on various task such as preparing for hearings, researching legal issues, reviewing court opinions and orders, drafting briefs and reviewing transcripts.  Here, the Court recognizes that these time entries involve substantive legal work that cannot be delegated to Mr. Epstein's associates as discussed in Section II.A.2, <u>supra</u>. However, again, the hours submitted by Mr. Epstein are excessive for the tasks involved in these familiar areas of practice.  In this type of matter, where Mr. Epstein is an experienced attorney with 15 years of experience practicing in this field, it is difficult for the Court to imagine that Mr. Epstein required the time submitted to adequately perform these tasks.  As our sister court has held "the higher the allowed hourly rate commanded based upon skill and experience, the shorter the time it should require an attorney to perform a particular task." <u>Apple Corps. Ltd</u>, 25 F. Supp. 2d at 490-91.  In light of the fact that Mr. Epstein charges $300 per hour for his experience and expertise, counsel must perform more efficiently.

Time entries related to Mr. Epstein's preparation for hearings and trial warrant close inspection as courts that have examined claimed hours for reasonableness have compared the time

18

spent preparing for the trial to the duration of the trial.
Apple Corps. Ltd, 25 F. Supp. 2d at 491 ("it is excessive for a
senior partner to spend almost three times as long to prepare for
a hearing as to attend it.")   While Mr. Epstein's ratio of time
spent in preparation to time spent attending a hearing does not
rise to the 3:1 ratio criticized in Apple Corp. Ltd., it often
approaches a 2:1 ratio.  Specifically, on October 24, 2000, Mr.
Epstein spent 8.9 hours preparing for a 3.5 hour hearing.  On
January 2, 2001, Mr. Epstein spent 5.8 hours to prepare for a 2.8
hour hearing.  Finally, on March 13, 2000, Mr. Epstein spent 8.6
hours preparing for a 6.2 hour hearing.  Accordingly, this Court
will again reduce the claimed hours by 60% from 376.7 hours to a
total of 150.7 hours, because the claimed hours are excessive for
the tasks performed.  No reasonable client, given the limited
relief obtained and failure to obtain the predominant relief
sought, would agree to foot such an enormous legal bill given the
relatively low monetary stakes in this case, especially when
completed at a top-tier rate of $300/hour.  It is well-settled
that "[h]ours that would not generally be billed to one's client
are not properly billed to an adversary." Maldonado, 256 F.3d at
184 (quoting Pub. Int. Research Group of N.J., Inc. v. Windall,
51 F.3d 1179, 1188 (3d Cir. 1995)(internal citations omitted)).

Thus, the Court will reduce the time spent performing these
task from April 9, 1999 to March 28, 2003 from a total of 610.9

19

hours to 305.9 hours.  This reduced figure represents: (1) 102.6 hours for attending hearings, trials and traveling; (2) 52.6 hours for phone calls and correspondence (reduced from 131.6 hours); and (3) 150.7 hours for preparing for hearings, performing legal research and drafting motions and briefs (reduced from 376.7 hours).

### B.   Attorney's Fees for Services Rendered After March 27, 2003

Defendants' fee application contains time entries from March 27, 2003 through June 16, 2005 relating to the parties' cross-motions for summary judgment, the parties' motions for reconsideration and Plaintiff's motion for summary judgment as to Defendants' counterclaims.  Defendants' affidavit states that Mr. Epstein spent a total of 205.1 hours on these maters and he requests fees and costs in the amount of $61,950.  This Court will not award these fees however, because as noted in this Court's March 2006 Opinion, Defendants enjoyed no success after the Court's Opinion and Order of March 27, 2003.  Instead, Defendants only lost ground in that they were required to refund a substantial part of the interim payment made in January 2002 and were denied a remedy upon Defendants' LRE claim.  Thus, this Court will deny Defendants' request for fees for the period starting on March 28, 2003 and ending on June 16, 2005.  As such, Defendants' total request will be reduced by $61,950.

20

C.   <u>**Attorney's Fees Related to the Preparation of**
     **Defendants' Fee Application**</u>

Defendants' fee application also contains time entries from June 25, 2005 through April 20, 2006 for time spent related to preparing and litigating Defendants' fee application.  As discussed <u>supra</u>, a "party entitled to an award of attorneys' fees is . . . entitled to reimbursement for the time spent litigating its fee application."  <u>Planned Parenthood</u>, 297 F.3d at 268. Here, Defendants submit hours totaling 45.1 hours and requests fees and costs in the amount of $13,530.

Although Defendants are entitled to fees related to litigating a fee application, the Court finds Defendants' request of 45.1 hours excessive for many of the reasons explained above (i.e., Mr. Epstein performed work that could have and should have been delegated to others at much less cost or by not working with the efficiency demanded of an attorney charging $300 per hour.) For example, Mr. Epstein's application includes time entries stating that he spent 30.5 hours drafting a brief and affidavit in support of his fee application and finalizing his billing records.  This 30.5 hours represents the time Mr. Epstein took to draft an 11-page brief (three pages of which contain what is essentially boiler-plate legal standards for awarding attorney's fees in an IDEA case) and a one and a one-half page affidavit in which Epstein described broadly the services he rendered.  Mr. Epstein also states that he spent an additional 2.3 hours on

21

April 2, 2006 to review this Court's March 2006 Opinion (which was only 18 pages) and 11.9 hours to "redraft brief" and affidavit of service and finalize his bills (presumably in preparation for re-submitting his application as requested by the Court).[5]  The time spent on these tasks is excessive in light of the high hourly fee Mr. Epstein charges and the necessity to re-apply to correct deficiencies in the initial application and the general unhelpfulness of the second application.  Moreover, any time spent finalizing bills is not work that warrants an attorney's time and attention, particularly one charging a rate of $300 an hour.  Thus, these claimed hours will be reduced by 50% from 45.1 hours to 22.6 hours.

    D.   **Defendants' Request for Expert Fees**

Defendants' motion for attorney's fees must be denied as to expert witness' fees and costs.  Expert's fees are not recoverable pursuant to 20 U.S.C. § 1415.  A recent Supreme Court case held that "the terms of the IDEA overwhelmingly support the conclusion that prevailing parents may not recover the costs of experts or consultants."  Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 126 S. Ct. 2455, 2461 (2006).  Thus, Defendants are

---

[5]  The Court considers it odd that Counsel spent 2.3 hours reviewing this Court's March 2006 Opinion, especially in light of the fact that Mr. Epstein spent only 1 hour reviewing this Court's 39-page opinion of June 15, 2005 and less than 1 hour reviewing this Court's 31-page September 29, 2004 opinion, both of which addressed dispositive motions before the Court.

not entitled to expert fees in the amount of $5,122.11 for fees related to the services of Dr. Barenbaum and Kathy Odri.

### E.   Corrections

In their motion papers, Defendants point out that the Court failed to address a "calculation error raised in Mr. Epstein's letter of [August 31, 2005] where [Defendants] requested the final net amount owed to them be corrected from $6,006.00 to $8,531.00."  This calculation error occurred in this Court's June 15, 2005 Opinion and Order.  See Deptford Township v. H.B., No. 01-784, slip op. (D.N.J. June 15, 2006).  The Court has reviewed Mr. Epstein's August 31, 2005 letter and the Court's previous opinions and determined that Mr. Epstein is correct that a calculation error has occurred.  As such, the Court will grant Defendants' request that the final net amount owed to Defendants be corrected from $6,006.00 to $8,531.00, as reflected in the accompanying Order.

## III. CONCLUSION

Defendants' application for attorney's fees will be approved at the reduced figure of $146,580.00 (which represents 488.6 hours) because this Court (1) finds that the hours submitted by Defendants' counsel for work performed between April 9, 1999 through March 28, 2003 and work performed in connection with litigating Defendants' fee application are excessive; (2) Defendants achieved no success after March 28, 2003; and (3)

23

Defendants are not entitled to expert fees.  The breakdown of fees is as follows:

| Time Entries Dates (Tasks) | Hours Submitted | Hours After Reduction |
|---|---|---|
| Preparation and trial before the Office of Administrative Law; Enforcement with New Jersey Office of Special Education, District Court and Court of Appeals; Motions for Summary Judgment; Motions for Reconsideration.<br> (April 9, 1999 through March 28, 2003) | 610.9 | 305.9 |
| Motion practice regarding motion for partial summary judgment; motion practice regarding Plaintiff's motion for reconsideration and Defendants' motion for partial summary judgment.<br>(March 28, 2003 through June 16, 2005) | 205.1 | 0 |
| Fee Application.<br><br>(June 25, 2005 through April 20, 2006) | 45.1 | 22.6 |
| **Total** | **861.1** | **328.5** |

This reduction results in 328.5 hours.  At the rate of $300 per hour, Mr. Epstein is entitled to attorney's fees of $98,550. This is the entire amount to which Defendants are entitled, as no reimbursement for expert fees is permitted.

The accompanying Judgment is entered as the final Order herein.

**December 21, 2006**          **s/ Jerome B. Simandle**
DATE                           JEROME B. SIMANDLE
                               UNITED STATES DISTRICT JUDGE